# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KEVIN SLAUGHTER | : |
|     Plaintiff | : |
| v | :    Civil Action No. AW-05-3103 |
| WARDEN, *et al.* | : |
|     Defendants | : |

o0o

## MEMORANDUM

Pending in the above-captioned civil rights action is Plaintiff's Motion for Summary Judgment and Defendants' Motion to Dismiss or for Summary Judgment.[1]  Paper No. 14 and 19. Plaintiff has filed a Response in Opposition to Defendants' motion.  Paper No. 21.  Defendants' Motion to Dismiss or for Summary Judgment, filed after Plaintiff's Motion for Summary Judgment, shall be construed in part as a Response in Opposition to Plaintiff's motion.  Upon review of the papers filed, the Court finds a hearing in this matter to be unnecessary.  Local Rule 105.6 (D. Md. 2004).   For the reasons set forth below, Plaintiff's Motion for Summary Judgment shall be denied and Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted.  All remaining motions shall also be denied.

### Plaintiff's Allegations

Plaintiff claims that his requests for assignment to protective custody have been wrongfully denied in light of his history of providing information to correctional officers.  Paper No. 1.  He asserts that he has been threatened by correctional staff that if he did not provide

---

[1] Also pending in this case are several motions filed by Plaintiff, including: Motions for Preliminary Injunction (Paper No. 12 and 15); Motions to Appoint Counsel (Paper No. 13 and 16); a Motion for Emergency Preliminary Injunction (Paper No. 23); and an Emergency Request Motion (Paper No. 24).

information regarding gang members, he would be set up for possession of contraband. *Id*. at p. 2. He further claims that Officer Marling told another inmate that Plaintiff is a snitch and, although Plaintiff reported the incident to Lt. Yacenech, Plaintiff was not placed on protective custody or transferred. *Id*. Plaintiff asserts that he was not moved because Marling and Yacenech wanted him to continue to provide them with information on other inmates in the housing unit so they could "clean it up." *Id*., *see also* Paper No. 5.

Plaintiff alleges that, shortly after he was labeled a snitch in March of 2005, he was sexually assaulted by another inmate who ran into his cell on or about March 22, 2005, and forced Plaintiff to perform oral sex.[2] Paper No. 1 at p. 2. He claims the inmate who assaulted him was in his cell for close to two hours. *Id*. Plaintiff states he reported the assault, but was still not moved or placed on protective custody. *Id*. In addition, Plaintiff claims that he would not have been sexually assaulted had Marling not told other inmates that he was a snitch. *Id*.

On March 31, 2005, Yacenech ordered Plaintiff moved to another housing unit. Paper No. 5 at p. 3. Plaintiff claims that he made a request to talk with Yacenech about the move because there were a lot of gang members in the new housing unit where he was to be moved. *Id.* Plaintiff states that the officer escorting him to his new cell, Whitacre, asked him if he feared for his safety and Plaintiff answered yes. *Id*. He claims that when Whitacre reported Plaintiff's fears to Lt. Whiteside, he was ordered to write a notice of infraction charging Plaintiff with refusing an institutional housing assignment. *Id*. Plaintiff was found guilty of the charges and asserts that his confinement to disciplinary segregation resulting from the charge constitutes

---

[2] Plaintiff has filed, under seal, further information regarding the identity of the inmate who assaulted him, as well as another inmate who assaulted him on a later occasion. *See* Papers No. 5, 17 and 18.

2

false imprisonment. *Id*. at p. 4.

On January 15 and 16, 2006, Plaintiff alleges he was sexually assaulted by another inmate, Anthony Fowlkes, who was assigned to the same cell as Plaintiff.  Plaintiff claimed that Fowlkes forced him to perform oral and anal sex on two different occasions.  Paper No. 21 at p. 2.  He claims that as a result of the assault, he was unable to empty his bowels and he reported the problem to medical staff. *Id*.

## Injunctive Relief Requests

Plaintiff has filed several motions seeking injunctive relief.  Papers No. 12, 15, 23 and 24.  He asserts that Defendants are engaging in illegal conduct by placing him in the same prison cell with violent inmates who do not want to share a cell with a gay man and/or an informer, such as himself.  Paper No. 12.  He seeks both monetary damages as well as an order requiring his placement in protective custody. *Id. see also* Paper No. 15.  Plaintiff has now been transferred to Roxbury Correctional Institution where, he says, Anthony Fowlkes is incarcerated.[3]  He also states that gang members are incarcerated there.  Plaintiff explains that he is waiting to be transferred to Eastern Correctional Institution and requests an order from the Court requiring his immediate assignment to protective custody upon his arrival at ECI.  Paper No. 24.

The legal standard to apply in considering an application for injunctive relief is set forth in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977), which holds that injunctive relief may only be granted if the movant can demonstrate: (i) the likelihood

---

[3] The Court notes that inmates Anthony Fowlkes and Curley Bennett, another inmate who allegedly assaulted Plaintiff, listed on the Division of Correction's online inmate locator and are not currently housed at Roxbury Correctional Institution or Eastern Correctional Institution.

3

he will be irreparably harmed if the preliminary injunction is denied; (ii) the likelihood that defendant will not be harmed if the requested relief is granted; (iii) the likelihood that Plaintiff will succeed on the merits; and (iv) that the public interest will be served if the injunction is granted.  *See  Blackwelder*, 550 F.2d at 195-96; *see also Ciena Corp. v. Jarrard*, 203 F.3d 312, 322-23 (4th Cir. 2000).

The initial factor to be examined in the aforementioned analysis is the "likelihood of irreparable harm to the plaintiff."  Indeed, the failure to make a clear showing of irreparable harm is, by itself, a ground upon which to deny a preliminary injunction. *See Direx Israel, Ltd. v. Breakthrough Medical Corporation*, 952 F.2d 802, 812 (4th Cir. 1992.)    In addition, the required irreparable harm must be "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989); *see also Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983).

Plaintiff has raised no allegation in his motions that would raise even a suspicion that his safety would be endangered at ECI if he were not assigned to protective custody immediately. Indeed, there is no evidence that Defendants will refuse to assign him to protective custody when he gets to ECI if circumstances warrant the assignment.  It is not the role of the Court to manage everyday security decisions involved in running a prison.  Accordingly, Plaintiff's requests for injunctive relief shall be denied.

**Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party.  *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

### Analysis

#### Failure to Protect Claim

In order to prevail on an Eighth Amendment claim based upon a failure to protect from violence,  Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one

5

prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

Defendants provide records in support of their Motion for Summary Judgment, including investigative reports conducted after Plaintiff reported sexual assaults.  Paper No. 19. [4]  With respect to the March, 2005, alleged sexual assault, Defendants explain that Plaintiff did not report the assault until April 8, 2005.  *Id*. at Ex. 1B, p. 1.  Despite the delay in reporting the incident, Plaintiff was taken to Memorial Hospital in Cumberland, Maryland for examination of sexual activity on April 13, 2005.  *Id*. at p. 2.  There is no report stating the results of the examination; however, when Plaintiff initially reported the incident, he allegedly admitted that he was not in fear of his assailant, and he wanted to be assigned to protective custody because "'he has been down for 18 years and just wants the rest of his time to be easy.'" *Id*. at p. 1.

---

[4] Exhibit 1 of Defendants' Motion contains seven separate groups of records each of which are several pages in length. None of the pages are numbered and none of the groups of records are assigned separate exhibit numbers, thereby requiring the Court to labor needlessly by hand-numbering the pages and dividing Exhibit 1 into seven separate sections (*i.e.*,Exhibit 1 and Exhibit 1A through 1G).  Local Rule 105.5.b requires that "[i]f any motion, memorandum or brief is accompanied by more than five exhibits, the exhibits shall be tabbed and indexed."  Counsel, no novice to litigation in this Court, is reminded to comply with the Local Rule requirements in the future.

While an investigation into Plaintiff's claims was pending, he was placed on administrative segregation. *Id*. at Ex. 1D, pp. 1– 16.  On July 27, 2005, Plaintiff was removed from administrative segregation and reassigned to general population because correctional staff believed he was "trying to manipulate housing" and the investigation into his claim did not indicate that his safety would be endangered in general population. *Id*. at pp. 17– 18.

Taking Plaintiff's allegations as true and assuming he did provide information to correctional officers about other inmates' involvement in prison gang activities, that cooperation alone does not necessarily mean that Plaintiff was in danger.  To the extent that he alleges he was labeled a snitch by officers who told other inmates about his participation, he offers no evidence that this in fact occurred, nor does he forecast evidence he plans to introduce to establish that as fact.  In addition, the nature of the assaults at issue in this case create, at best, a difficult situation for Defendants to manage.  Plaintiff does not dispute that he is an active homosexual,[5] that he failed to report the assaults immediately, that he had no visible injuries, and that the reported assaults could not be confirmed medically.  The difficult decision presented to Defendants in this case was to either remove Plaintiff from administrative segregation or allow him to manipulate an assignment to protective custody, resulting in a waste of limited resources. Where, as here, considerable resources are brought to bear in an effort to investigate the claims and there is evidence that the claim was not simply ignored, the decision not to assign Plaintiff to protective custody is one better left to the expertise of correctional officials.  It is not the province of this Court to determine how a particular prison might be more beneficently operated:

---

[5] Plaintiff is described in several reports as an active homosexual and he has not disputed the accuracy of that description.

the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). There is enough evidence in this case that Plaintiff's claims were taken seriously and measures were taken in light of those allegations to insure that he was not exposed to unnecessary danger.

Due Process Claim

In the prison context there are two different types of constitutionally protected liberty interests which may be created by state action. The first is created when there is a state created entitlement to an early release from incarceration. *Board of Pardons v. Allen*, 482 U. S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U. S. 539, 557 (1974) (state created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U. S. at 484. Plaintiff's claim concerning the Notice of Infraction issued on March 31, 2005, charging him with refusing housing is subject to dismissal, as it does not support a due process claim under *Allen*. The only sanction imposed for the guilty finding was 15 days of disciplinary segregation. No diminution of confinement credits were revoked. To the extent that Plaintiff is attempting to raise a due process claim under *Sandin*, he has failed to establish the loss of a liberty interest resulting from the alleged false accusations contained in the infraction. Assignment to segregation, without allegations that the assignment represents a significant hardship as compared to assignment to general population, is not an atypical hardship in the context of prison life. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (conditions of administrative segregation at Maryland Penitentiary including vermin infestation and filth did not impose significant hardship).

**Conclusion**

No genuine dispute of material fact exists to preclude summary judgment in favor of Defendants. Accordingly, by separate Order which follows, Defendants' Motion for Summary Judgment shall be granted and judgment will be entered in their favor.


August 9, 2006                                             _____/s/_____
Date                                                                    Alexander Williams, Jr.
                                                                        United States District Judge